NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0713-15T3

 APPROVED FOR PUBLICATION
MAIN STREET AT WOOLWICH, LLC,
WOOLWICH COMMONS, LLC, and July 25, 2017
WOOLWICH CROSSINGS, LLC,
 APPELLATE DIVISION

 Plaintiffs-Appellants,

v.

AMMONS SUPERMARKET, INC., BENJAMIN
AMMONS, R.S. GASIOROWSKI, ESQUIRE,
and GASIOROWSKI & HOLOBINKO,

 Defendants-Respondents.
______________________________________________

 Argued November 29, 2016 – Decided July 25, 2017

 Before Judges Messano, Espinosa, and
 Guadagno.

 On appeal from the Superior Court of New
 Jersey, Law Division, Gloucester County,
 Docket No. L-1477-14.

 Marc B. Kaplin (Kaplin Stewart Meloff Reiter
 & Stein, P.C.) of the Pennsylvania bar,
 admitted pro hac vice, argued the cause for
 appellants (Kaplin Stewart Meloff Reiter &
 Stein, P.C., attorneys; Daniel R. Utain and
 Mr. Kaplin, on the briefs).

 Theodora McCormick argued the cause for
 respondents Ammons Supermarket, Inc. and
 Benjamin Ammons (Epstein Becker & Green,
 P.C., attorneys; Anthony Argiropoulos and
 Ms. McCormick, on the brief).
 Christopher J. Carey argued the cause for
 respondents R.S. Gasiorowski, Esq. and
 Gasiorowski & Holobinko (Graham Curtin,
 P.A., attorneys; Mr. Carey, of counsel and
 on the brief; Jared J. Limbach, on the
 brief).

 The opinion of the court was delivered by

GUADAGNO, J.A.D. (retired and assigned on recall).

 Plaintiffs, Main Street at Woolwich, LLC (Main Street),

Woolwich Commons, LLC (Commons), and Woolwich Crossings, LLC

(Crossings), successfully defended against litigation brought by

defendants Ammons Supermarket, Inc. and Benjamin Ammons (Ammons

defendants) challenging the approval of a general development

plan (GDP) submitted by plaintiffs to build a shopping complex

in Woolwich Township (Woolwich Shopping Complex or Complex).

Plaintiffs then filed a three-count complaint against the Ammons

defendants, their attorney, R.S. Gasiorowski, and his firm,

Gasiorowski & Holobinko (collectively Gasiorowski), alleging

malicious abuse of process (count one), tortious interference

with a prospective contract (count two), and civil conspiracy

(count three). Plaintiffs claimed defendants filed "sham

litigation," intended solely to prevent competition with their

supermarket.

 2 A-0713-15T3
 The motion judge found defendants' litigation challenging

the GDP was protected by the Noerr-Pennington doctrine1 and was

not objectively baseless. The judge dismissed plaintiffs'

complaint pursuant to Rule 4:6-2(e) for failure to state a claim

upon which relief can be granted.

 While we agree with the motion judge that the Noerr-

Pennington doctrine applies here, the judge provided no support

for her conclusion that the Ammons challenge to the GDP was not

objectively baseless, and she failed to consider the findings of

a prior judge who dismissed the complaint. In addition, and as

a matter of first impression, we adopt the holding in Hanover

3201 Realty, LLC v. Village Supermarkets, Inc., 806 F.3d 162,

180 (3d Cir. 2015), cert. denied, ___ U.S. ___, 136 S. Ct. 2451,

195 L. Ed. 2d 264 (2016), and conclude that the motion judge was

required to consider the allegations in plaintiffs' complaint

that the Ammons action was part of a pattern of sham litigation

brought by defendants for the purpose of injuring market rivals

rather than to redress actual grievances.

1
 The Noerr-Pennington doctrine draws its name from the United
States Supreme Court opinions in Eastern Railroad Presidents
Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S. Ct.
523, 5 L. Ed. 2d 464 (1961), and United Mine Workers of America
v. Pennington, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626
(1965), and provides that those who petition the government for
redress are generally afforded immunity unless the action is
objectively baseless.

 3 A-0713-15T3
 We note that Rule 4:6-2(e) motions to dismiss "should be

granted in only the rarest of instances." Printing Mart-

Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 772 (1989); see

also Lieberman v. Port Auth. of N.Y. & N.J., 132 N.J. 76, 79

(1993). The Rule requires that plaintiffs must receive "every

reasonable inference of fact" and a reviewing court must search

the complaint "in depth and with liberality to ascertain whether

the fundament of a cause of action may be gleaned even from an

obscure statement of claim, opportunity being given to amend if

necessary." Printing Mart, supra, 116 N.J. at 746 (quoting

DiCristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252

(App. Div. 1957)).

 Applying the Printing Mart standard, we are satisfied that

sufficient facts were alleged to suggest defendants engaged in

sham litigation for the sole purpose of impeding the development

of plaintiffs' shopping center and to stifle competition.

 I.

 Plaintiffs Main Street, Commons, and Crossings are the

collective owners of 244 acres of land in Woolwich Township. In

2007, plaintiffs began efforts to develop the property as a

shopping complex. In 2008, the New Jersey State Planning

Committee approved the Township's petition for initial plan

endorsement which designated areas of the town as the regional

 4 A-0713-15T3
center. The Township then amended its zoning ordinance to

create zoning, subdivision, and land development regulations for

the regional center and re-zoned the property to accommodate the

Complex.

 In 2009, plaintiffs submitted a GDP to Woolwich Township

seeking to develop approximately 1,500,000 square feet of

commercial and retail space on the property. The GDP proposed

the construction of Main Street, Commons, and Crossings, as

three separate retail and commercial developments. In 2010, the

Woolwich Township Joint Land Use Board (Board) approved the GDP

permitting Main Street, Commons, and Crossings to be developed

in three phases. At the time of the approval, there was no

mention of which stores would occupy the Complex.

 In April 2012, Commons submitted an application for site

plan approval for the development of the first phase of the

Complex. From the proposed site plan, it was learned for the

first time that a Wal-Mart Supercenter would be located within

the Commons. Because the proposed square footage of the Wal-

Mart exceeded that which was contained in the original GDP,

plaintiffs sought to amend the GDP. In December 2012, the Board

approved an amended GDP which increased the building area and

added forty-one acres to the Crossings development parcel. On

 5 A-0713-15T3
October 3, 2013, the Board approved the plaintiffs' unopposed

final site plan.

 On January 17, 2013, Gasiorowski filed a complaint in lieu

of prerogative writs on behalf of the Ammons defendants against

plaintiffs and the Board. The complaint asserted improper

change of the phasing dates of the Complex; inadequate water and

sewer resources; improper addition of acreage to the Crossings

parcel; violations of the Municipal Land Use Law (MLUL),

N.J.S.A. 40:55D-1 to -163; inadequate proof to support the

variances and waivers; failure to comply with notice

requirements; and failure to set forth findings of fact and

conclusions of law.

 Frank Pagano, a Woolwich Township resident and a member of

the United Food and Commercial Workers Union, filed a similar

lawsuit. The Ammons and Pagano complaints were subsequently

consolidated.

 On April 24, 2014, the Chancery Judge2 granted summary

judgment to defendants and dismissed both complaints with

prejudice. On May 28, 2014, Gasiorowski filed a notice of

appeal on behalf of the Ammons defendants arguing that the GDP

2
 The summary judgment motion was heard in the Law Division by
the Presiding Judge of the Chancery Division (herein the
Chancery Judge).

 6 A-0713-15T3
was void, therefore rendering the amended GDP invalid, and that

the Board committed errors during the approval process. Pagano

did not appeal from the dismissal.

 While the Ammons appeal was pending, Richard Matwes, a

Senior Real Estate Director of the Wakefern Food Corporation

(Wakefern),3 telephoned Steven Wolfson, a representative of

plaintiffs, and inquired whether plaintiffs would be willing to

lease space at the Complex to the Ammons defendants.

 On August 7, 2015, we affirmed the Chancery Judge's

decision to grant summary judgment. We rejected Ammons' claim

that the Board did not have authority to consider the original

GDP or its amendments, and found several of Ammons' arguments to

be without sufficient merit to warrant discussion. Pagano v.

Woolwich Twp. Joint Land Use Bd., No. A-4432-13 (App. Div. Aug.

7, 2015) (slip op. at 13, 17).

 On October 21, 2014, plaintiffs filed a complaint against

Ammons and Gasiorowski alleging malicious abuse of process in

filing the Ammons lawsuit; tortious interference with

prospective business contracts, specifically the prospective

tenants in the Woolwich Shopping Complex; and civil conspiracy

3
 Plaintiffs allege the Ammons defendants are members of
Wakefern, a retailer-owned food cooperative, and own and operate
a number of ShopRite supermarkets in New Jersey and
Pennsylvania.

 7 A-0713-15T3
to employ sham litigation to impede, hinder, and delay competing

developments such as Wal-Mart.

 On September 18, 2015, a different judge (motion judge)

heard arguments on defendants' motions to dismiss and determined

that defendants enjoyed immunity conferred by the Noerr-

Pennington doctrine, and plaintiffs failed to prove the sham

exception to that doctrine as the complaint was not objectively

baseless. The motion judge dismissed the complaint as to all

defendants.

 On appeal, plaintiffs argue that their complaint is not

barred by Noerr-Pennington as it falls under the sham exception;

the Ammons litigation was objectively baseless; the Noerr-

Pennington doctrine is not applicable to plaintiffs' claim for

abuse of process; and the complaint stated valid claims for

malicious abuse of process, tortious interference with

prospective business contracts, and civil conspiracy.

 II.

 The Noerr-Pennington doctrine holds that petitioners for

"government . . . redress are generally immune from antitrust

liability" when defending against antitrust claims predicated on

this petitioning activity. Prof'l Real Estate Inv'rs., Inc. v.

Columbia Pictures Indus., Inc., 508 U.S. 49, 56, 113 S. Ct.

1920, 1926, 123 L. Ed. 2d 611, 621 (1993) (PRE). "The

 8 A-0713-15T3
doctrine's provenance lies in the field of antitrust law, but

its reach has since then been extended to include common-law

torts such as malicious prosecution and abuse of process." Nader

v. Democratic Nat'l Comm., 555 F. Supp. 2d 137, 157 (D.D.C.

2008) (citing Whelan v. Abell, 48 F.3d 1247, 1254 (D.C. Cir.

1995)), aff’d, 567 F.3d 692 (D.C. Cir. 2009).

 New Jersey courts have recognized the Noerr-Pennington

doctrine and applied it to afford immunity to those who petition

the government for redress. See Structure Bldg. Corp. v. Abella,

377 N.J. Super. 467, 471 (App. Div. 2005) (Noerr-Pennington

doctrine affords immunity to persons who object to land use

applications); Fraser v. Bovino, 317 N.J. Super. 23, 37-38 (App.

Div. 1998) (objectors to land use applications are immune from

tort liability under the Noerr-Pennington doctrine unless "the

conduct at issue 'is a mere sham to cover . . . an attempt to

interfere directly with the business relationships of a

competitor.'" (quoting PRE, supra, at 60-61, 113 S. Ct. at 1928,

123 L. Ed. 2d at 624)), certif. denied, 160 N.J. 476 (1999).

 However, the Noerr-Pennington doctrine does not provide

putative plaintiffs with an unlimited right to challenge

competitors. Sham litigation receives no protection, and the

presumption of immunity is dispelled when a lawsuit is

"objectively baseless in the sense that no reasonable litigant

 9 A-0713-15T3
could realistically expect success on the merits" and is brought

with the specific intent to further wrongful conduct "through

the 'use [of] the governmental process—as opposed to the outcome

of that process.'" PRE, supra, 508 U.S. at 60-61, 113 S. Ct. at

1928, 123 L. Ed. 2d at 624 (alteration in original) (emphasis

omitted) (quoting City of Columbia v. Omni Outdoor Advert., 499

U.S. 365, 380, 111 S. Ct. 1344, 1354, 113 L. Ed. 2d 382, 398

(1991)). The second prong of the test is only reached if the

challenged litigation is found to be objectively meritless under

the first prong. Id. at 60, 113 S. Ct. at 1928, 123 L. Ed. 2d at

624.

 Sham litigation is found where a defendant's activities are

"not genuinely aimed at procuring favorable government action,"

Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492,

500 n.4, 108 S. Ct. 1931, 1937 n.4, 100 L. Ed. 2d 497, 505 n.4

(1988), and may be "evidenced by repetitive lawsuits carrying

the hallmark of insubstantial claims." Otter Tail Power Co. v.

United States, 410 U.S. 366, 380, 93 S. Ct. 1022, 1031, 35 L.

Ed. 2d 359, 369 (1973).

 In California Motor Transport Co. v. Trucking Unlimited,

404 U.S. 508, 513, 92 S. Ct. 609, 613, 30 L. Ed. 2d 642, 648

(1972), the Court discussed repetitive meritless claims:

 One claim, which a court or agency may think
 baseless, may go unnoticed; but a pattern of

 10 A-0713-15T3
 baseless, repetitive claims may emerge which
 leads the factfinder to conclude that the
 administrative and judicial processes have
 been abused. That may be a difficult line to
 discern and draw. But once it is drawn, the
 case is established that abuse of those
 processes produced an illegal result, viz.,
 effectively barring respondents from access
 to the agencies and courts. Insofar as the
 administrative or judicial processes are
 involved, actions of that kind cannot
 acquire immunity by seeking refuge under the
 umbrella of "political expression."

 California Motor "recognized that the filing of a whole

series of lawsuits and other legal actions without regard to the

merits has far more serious implications than filing a single

action, and can serve as a very effective restraint on trade."

USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades

Council, 31 F.3d 800, 811 (9th Cir. 1994). In USS-POSCO, the

Ninth Circuit held that "[w]hen dealing with a series of

lawsuits, the question is not whether any one of them has merit

. . . but whether they are brought pursuant to a policy of

starting legal proceedings without regard to the merits and for

the purpose of injuring a market rival." Ibid.

 In determining whether the petitioning activity is a sham

to cover what is actually nothing more than an attempt to

interfere directly with the business relationships of a

competitor, courts must first examine "whether there is a single

 11 A-0713-15T3
filing or a series of filings." Hanover, supra, 806 F.3d at

180.

 Hanover involved a claim that the owner of a ShopRite near

Morristown and its subsidiary filed numerous administrative and

court challenges to Hanover 3201 Realty's (Hanover Realty)

permit applications to develop a Wegmans approximately two miles

away. Id. at 166-67. Hanover Realty sued the defendants in

federal district court alleging violations of the Sherman Act,4

and claiming the defendants' filings were baseless and intended

only to frustrate the entry of a competing Wegmans into the

market. Id. at 170. The complaint also alleged five state-law

violations. Ibid.

 The district judge dismissed the suit, holding that Hanover

Realty lacked antitrust standing as it was not a competitor,

consumer, or participant in the restrained markets and thus did

not sustain the type of injury the antitrust laws were intended

to prevent. Ibid. After dismissing the Sherman Act claims, the

judge declined to exercise supplemental jurisdiction as to the

state-law claims. Ibid.

 Hanover Realty appealed and the Third Circuit determined

that Hanover Realty demonstrated antitrust injuries:

4
 15 U.S.C.A. §2.

 12 A-0713-15T3
 The end goal of Defendants' alleged
 anticompetitive conduct was to injure
 Wegmans, a prospective competitor. To keep
 Wegmans out of the market, Defendants sought
 to impose costs not on their competitor, but
 on Hanover Realty, the party tasked with
 obtaining the necessary permits before
 construction could begin. . . . And
 Defendants would succeed in their scheme
 either by inflicting such high costs on
 Hanover Realty that it was forced to abandon
 the project or by delaying the project long
 enough so that Wegmans would back out of the
 agreement. In both scenarios, injuring
 Hanover Realty was the very means by which
 Defendants could get to Wegmans; Hanover
 Realty's injury was necessary to Defendants'
 plan.

 [Id. at 174.]

 The defendants in Hanover argued their petitioning activity

was protected by the Noerr-Pennington doctrine. Id. at 178. The

Third Circuit discussed both California Motor and Professional

Real Estate and determined that, in assessing whether the

defendants engaged in sham litigation, courts should first

determine whether there is a single filing or a series of

filings:

 Where there is only one alleged sham
 petition, Professional Real Estate's
 exacting two-step test properly places a
 heavy thumb on the scale in favor of the
 defendant. With only one "data point," it is
 difficult to determine with any precision
 whether the petition was anticompetitive. .
 . . In contrast, a more flexible standard is
 appropriate when dealing with a pattern of
 petitioning. . . .

 13 A-0713-15T3
 Accordingly, when a party alleges a
 series of legal proceedings, . . . the sham
 litigation standard from California Motor
 should govern. This inquiry asks whether a
 series of petitions were filed with or
 without regard to merit and for the purpose
 of using the governmental process (as
 opposed to the outcome of that process) to
 harm a market rival and restrain trade. In
 deciding whether there was such a policy of
 filing petitions with or without regard to
 merit, a court should perform a holistic
 review that may include looking at the
 defendant's filing success—i.e., win-loss
 percentage—as circumstantial evidence of the
 defendant's subjective motivations.

 [Id. at 180-81.]

 Here, plaintiffs' complaint alleges Gasiorowski and Ammons,

through their actions in this case and their association with

Wakefern, engaged in an extensive course of conduct, including

sham litigation, to interfere with the development of

supermarkets that would compete with ShopRite stores.

Plaintiffs provided the following examples of alleged attempts

by defendants to thwart ShopRite competitors: opposing the

expansion of a Wal-Mart in Hamilton Township; opposing

development of a shopping center in Egg Harbor Township which

would include a Wal-Mart and appealing the approvals; opposing

the conversion of a vacant store in Springfield Township to a

Stop & Shop supermarket and appealing approvals; opposing the

development of a shopping center in Linden which would include a

Wal-Mart; opposing the construction of Wal-Marts in Old Bridge,

 14 A-0713-15T3
Manchester Township, and Middle Township; opposing a

redevelopment plan in Harrison Township permitting the

construction of a supermarket; appealing the issuance of an

accessory use certificate issued for a Philadelphia,

Pennsylvania Wal-Mart; opposing the upgrade to a Stop & Shop

supermarket in Westfield Township; opposing the expansion of

Wal-Marts in Cinnaminson and Millville; opposing the

construction of an Aldi supermarket in Union Township; opposing

a shopping center which would include a Wegmans in Moorestown;

challenging a land use approval granted to the developer of a

shopping complex in Clark Township; and opposing the expansion

of a Kings supermarket in Bernardsville.

 In determining whether defendants were protected by the

Noerr-Pennington doctrine, the motion judge considered only the

merits of this action:

 Now, I recognize that there is an
 exception to the Noerr-Pennington Doctrine
 under the sham exception. But one has to be
 concerned whether we have such an exception
 as noted in this case. The lawsuit, the
 Court finds, to qualify as a sham must be
 objectively baseless. The Court is not to
 consider the underlying motivation. And I
 have to determine under this Doctrine
 whether this is just an exercise of a
 legitimate right by a Defendant in this
 matter who had standing to voice his
 concerns.

 I find that the Defendant did have
 standing that he should have been able to

 15 A-0713-15T3
 voice his concerns. I think despite the
 fact that we have a denial in the Appellate
 Division, I still find that these Defendants
 were exercising what is permissible under
 the law.

 The mere fact that the Defendants
 appealed is not in any way an abuse of this
 process. They were not in any way, shape or
 form using the Court process to [effectuate]
 an illegal goal.

 I find that the Noerr-Pennington
 Doctrine is applicable in this matter. It
 is there for a reason. And it is to place
 the Defendants in a position that they can
 enjoy immunity from claims for damages based
 upon that exercise of their right to object.
 And I believe that these Defendants did have
 such a right in this instance.

 Even under the standard that I have to
 employ, I find that the Plaintiff has failed
 to demonstrate that there was an abuse of
 process. And, therefore, I am dismissing
 that claim.

 While the motion judge purported to apply the "objectively

baseless" test set forth in Professional Real Estate, she

provided only cursory and unsupported conclusions in finding

defendants exercised a "permissible right" in filing this

litigation.

 There is no indication the motion judge considered the

conclusions of the Chancery Judge who dismissed the

Ammons/Pagano complaint, or our opinion affirming that decision.

The Chancery Judge found the Woolwich ordinance was valid, the

initial GDP was proper, and the challenge to the GDP was time-

 16 A-0713-15T3
barred. In addition, the Chancery Judge found the Ammons/Pagano

plaintiffs "were aware of Woolwich's interpretation of the

ordinance at the time the original GDP was approved;" their

challenge to the Board's action adding 41,000 acres to the

project was without merit; and their challenge to the water and

sewer issues were "not supported by the MLUL or the case law."

 On appeal, we affirmed the Chancery Judge's decision that

the appeal regarding the original GDP was untimely, the amended

GDP was valid, and found that defendants' remaining arguments

raised on appeal were meritless and did not warrant discussion.

Pagano, supra, slip op. at 13-17.

 From the record before us, we find no support for the

motion judge's finding that the Ammons/Pagano complaint raised

"real concerns about the validity of the Woolwich GDP

ordinance." Moreover, the motion judge did not mention, let

alone consider, plaintiffs' claims that this action was part of

a pattern of successive filings, used by ShopRite/Wakefern as an

anticompetitive weapon for the purpose of injuring market

rivals. Had the motion judge examined the filings referenced in

plaintiffs' complaint and found "[a] high percentage of

meritless or objectively baseless proceedings," it would "tend

to support a finding that the filings were not brought to

redress any actual grievances." Hanover, supra, 806 F.3d at 181.

 17 A-0713-15T3
 In Waugh Chapel South, LLC v. United Food & Commercial

Workers Union Local 27, 728 F.3d 354, 364 (4th Cir. 2013), the

Fourth Circuit held that when applying California Motor "the

subjective motive of the litigant and the objective merits of

the suits are relevant, but other signs of bad-faith litigation

. . . may also be probative of an abuse of the adjudicatory

process." The Waugh Chapel panel affirmed a finding of sham

litigation where only one of fourteen proceedings were

successful. Id. at 365.

 While the circuit court decisions in Hanover and Waugh

Chapel do not have binding effect, see Dewey v. R.J. Reynolds

Tobacco Co., 121 N.J. 69, 79-80 (1990), we accord them "due

respect" and adopt their reasoning here. Guided by these

principles, we conclude that the motion judge failed to consider

plaintiffs' claim that defendants had engaged in sham litigation

for the purpose of gaining a competitive advantage.

 III.

 Plaintiffs also maintain that Noerr-Pennington does not

apply to claims of malicious abuse of process and the trial

court erred in finding that defendants are protected by the

doctrine. Defendants' motion to dismiss alleged that

plaintiffs' malicious abuse of process claims were barred by the

Noerr-Pennington doctrine. Alternatively, defendants argue that

 18 A-0713-15T3
plaintiffs have failed to allege that defendants "caused any

judicial process to issue improperly." After determining that

defendants were immune under Noerr-Pennington, the motion judge

found simply that plaintiffs failed to demonstrate that there

was an abuse of process.

 As we are remanding the matter for the court to consider

plaintiffs' claim that defendants engaged in a pattern of sham

litigation, we need not address the insufficiency claims as to

the three counts in plaintiffs' complaint. However, we provide

the following guidance.

 IV.

 "The gist of the tort of malicious abuse of process is

. . . the misuse, or 'misapplying process justified in itself

for an end other than that which it was designed to

accomplish.'" Baglini v. Lauletta, 338 N.J. Super. 282, 293

(App. Div.) (quoting Prosser & Keeton on Torts § 121 at 897 (5th

ed. 1984)), certif. denied, 169 N.J. 607, appeal dismissed, 169

N.J. 608 (2001). To establish malicious abuse of process, it

must be shown that the defendant "perform[ed] further acts after

the issuance of process which represent the perversion or abuse

of the legitimate purposes of that process." Penwag Prop. Co. v.

Landau, 148 N.J. Super. 493, 499 (App. Div. 1977), aff'd, 76

N.J. 595 (1978).

 19 A-0713-15T3
 In Tedards v. Auty, 232 N.J. Super. 541, 543-44 (App. Div.

1989), an attorney obtained a writ in a matrimonial matter

resulting in the plaintiff's incarceration. The attorney then

made misrepresentations to a judge which resulted in the setting

of a substantial bail before the plaintiff's release. Id. at

544, 548. After the plaintiff brought an action for abuse of

process, the trial judge granted the defendant's motion for

summary judgment. Id. at 549-51. We reversed, because the

misrepresentations made after the writ was obtained satisfied

the "further acts" requirement. Id. at 550-51.

 Here, plaintiffs' complaint alleges improper use of the

legal process by filing the Ammons lawsuit with knowledge that

the claims were without merit. The further acts alleged include

the filing of the appeal and approaching a representative of

plaintiffs to lease space at Commons while the appeal was

pending. Plaintiffs argue that this action undermines

defendants' claim that they opposed the development in good

faith and clearly demonstrates that defendants only engaged in

litigation for competitive advantage. Plaintiffs also point to

the timing of the litigation, noting that defendants did not

appeal the original GDP approval and only initiated litigation

after learning a ShopRite competitor would be a tenant at

Commons.

 20 A-0713-15T3
 On remand, the court must consider each of these claims and

afford plaintiffs every reasonable inference of fact. Printing

Mart, supra, 116 N.J. at 746.

 V.

 Plaintiffs argue the motion judge's dismissal of their

tortious interference claim is clearly erroneous. To survive

defendants' motion to dismiss, plaintiffs' tortious interference

claim must rest on facts plausibly supporting a conclusion that

defendants' actions were "improper" or "wrongful." Nostrame v.

Santiago, 213 N.J. 109, 123 (2013). In determining whether the

conduct complained of is improper, there must be "an evaluation

of the nature of and motive behind the conduct, the interests

advanced and interfered with, societal interests that bear on

the rights of each party, the proximate relationship between the

conduct and the interference, and the relationship between the

parties." Id. at 122 (citing Restatement (Second) of Torts §767

(1979)).

 We note that no appeals were taken from the approval of the

original GDP plan and it was not until after plaintiffs

identified Wal-Mart as a tenant in the Commons development in

April 2012 that the Ammons defendants retained Gasiorowski to

challenge the amended GDP approval. That litigation began in

January 2013 and continued until August 2015, when we affirmed

 21 A-0713-15T3
the order dismissing the Ammons complaint. Plaintiffs'

complaint alleges that during the two-and-one-half-year pendency

of this litigation, they were unable to proceed with the

development of Commons, could not enter into leases with

prospective tenants, and lost "credibility in the marketplace."

 VI.

 The motion judge found that her dismissal of the tortious

interference and malicious abuse of process claims precluded an

independent cause of action for the civil conspiracy claim.

 A civil conspiracy occurs when "two or more persons acting

in concert to commit an unlawful act, or to commit a lawful act

by unlawful means, the principal element of which is an

agreement between the parties to inflict a wrong against or

injury upon another, and an overt act that results in damage."

Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super.

337, 364 (App. Div. 1993) (quoting Rotermund v. U.S. Steel

Corp., 474 F.2d 1139, 1145 (8th Cir. 1973)), certif. denied, 135

N.J. 468 (1994).

 On remand, if plaintiffs have sufficiently pled claims for

tortious interference or malicious abuse of process, either may

serve as the underlying tort required for a claim for civil

conspiracy.

 22 A-0713-15T3
 VII.

 Finally, Gasiorowski alleges that plaintiffs' claims

against him are premature as the Ammons defendants have not

asserted an advice of counsel defense. This claim was not

raised before the motion judge and is not properly before us.

See State v. Robinson, 200 N.J. 1, 20-22 (2009).

 VIII.

 The September 18, 2015 orders dismissing plaintiffs'

complaint are reversed and the matter is remanded for

proceedings consistent with this opinion. We do not retain

jurisdiction.

 23 A-0713-15T3