**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3773-23

THE NAR GROUP, INC.,

    Plaintiff-Appellant,

v.

SAVE LEBANON TOWNSHIP
COALITION, a non-profit
corporation, WILLIAM BOHN,
RICHARD WEBB, ESQ., and
ROBYN DAVIDSON, jointly,
individually and severally,

    Defendants-Respondents.

_____

Argued September 10, 2025 – Decided October 15, 2025

Before Judges Mayer, Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0343-23.

Roger K. Marion argued the cause for appellant (Marion & Allen, PC, and The Marchese Law Firm, LLC, attorneys; Roger K. Marion and Daniel G.P. Marchese, on the briefs).

James K. Webber argued the cause for respondents Save Lebanon Township Coalition, Richard Webb, and Robyn Davidson (Webber McGill, LLC, attorneys; James K. Webber, on the brief).

Paul M. Bishop argued the cause for respondent William Bohn (Mason, Griffin & Pierson, PC, attorneys; Paul M. Bishop, of counsel and on the brief).

PER CURIAM

Plaintiff NAR Group, Inc. appeals from a December 1, 2023 order dismissing its complaint against defendants Save Lebanon Township Coalition (SLTC), Robyn Davidson, and Richard Webb, Esq. (collectively, defendants) and a June 20, 2024 order dismissing its complaint against defendant William Bohn (Bohn). We affirm.

We summarize the facts from the motion record. Plaintiff owns farm property (Property) in Lebanon Township (Township). Plaintiff produces hemp and forest products using indoor and outdoor growing spaces. Bohn owns several properties that were qualified as farms in the Township. SLTC is a New Jersey non-profit corporation formed by Bohn, Webb, and Davidson, who also serve as SLTC's principals.

In 2021, plaintiff obtained a permit to cultivate cannabis at the Property. In the spring of 2022, plaintiff filed a site plan application with the Township's planning board for an indoor medical cannabis facility. Around the same time,

2

Bohn visited the Property and asked plaintiff's principal about the cannabis cultivation business. During their discussion, plaintiff's principal described the intended use of the Property if it received site plan approval. Bohn expressed an interest in investing with plaintiff. However, plaintiff's principal advised Bohn regarding the state regulations which precluded adding additional members until at least October 2023.

Prior to the Township planning board's consideration of plaintiff's site plan application, Webb submitted an August 12, 2022 letter objecting to review of the application based on lack of jurisdiction. Webb claimed only the Township Board of Adjustment (zoning board) had jurisdiction because plaintiff's application required interpretation of Township's zoning ordinances §§ 400-4 and 400-9(a). Specifically, Webb argued the Township zoning board needed to decide if plaintiff's indoor operation of a pharmaceutical marijuana production facility constituted a farm under the ordinances. The Township planning board agreed and dismissed plaintiff's application for lack of jurisdiction.

Plaintiff filed a verified complaint in lieu of prerogative writs against the Township's planning board, mayor, and committee members in the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-454-22

(First lawsuit).[1]    The complaint in the First lawsuit alleged:    plaintiff's application was automatically approved in accordance with N.J.S.A. 40:55D-18 and -46 (counts one and two); the Township planning board's decision that it lacked jurisdiction to review plaintiff's site plan application was arbitrary, capricious, and unreasonable (count three); entitlement to a declaratory judgment that "the cultivation of medical marijuana is an agricultural use permitted in the Resource Conservation Zone" (count four); and violations of 42 U.S.C. § 1983 and due process (counts five and six).

Plaintiff moved for summary judgment against the Township's planning board, mayor, and committee members.  SLTC filed a motion to intervene as a defendant in the First lawsuit and cross-moved for summary judgment, arguing the Township zoning board, not the Township planning board, had exclusive jurisdiction to review plaintiff's application.

In a March 27, 2023 order and accompanying thirty-four-page written statement of reasons, the motion judge in the First lawsuit granted SLTC's motion to intervene, denied plaintiff's motion for summary judgment, and granted SLTC's cross-motion for summary judgment limited to counts one and

---

[1]  According to Bohn's merits brief, the First lawsuit is still pending in the trial court.

two. In partially granting SLTC's cross-motion for summary judgment, the judge found "[i]n the absence of a clear showing of defendants' inaction, inattention or purposeful delay, plaintiff's application [was] not entitled to automatic approval." In denying plaintiff's motion for summary judgment, the judge concluded there were "genuine issues of material fact regarding whether the [Township planning board] acted arbitrarily, capriciously, or unreasonably in determining it lacked proper jurisdiction to decide plaintiff's site plan application." The judge wrote:

> The trier of fact must determine whether defendants' actions were arbitrary capricious, and unreasonable in light of the fact that plaintiff did not initially apply for or obtain a zoning permit for the proposed use and did not apply to the [zoning board] for an interpretation of whether cannabis cultivation fit the classification as a farm under the zoning ordinances.

Both parties moved for reconsideration of the March 27, 2023 order. In a May 30, 2023 order and accompanying written statement of reasons, the judge denied plaintiff's motion and partially granted defendants' cross-motion, dismissing count four of plaintiff's complaint without prejudice. The judge determined that "[r]ather than usurp the authority and expertise of the [Township zoning board], the more prudent course [wa]s to allow plaintiff to make its full presentation with testimonial and documentary proofs to the [Township zoning

5

board]" so that municipal body could determine whether the cultivation of medical marijuana constituted an agricultural use consistent with the Township's zoning ordinances.

In June 2023, plaintiff filed an application with the Township zoning board for interpretation of the Township's ordinances applicable to farms and other agricultural and horticultural uses for the cultivation of medical cannabis. SLTC opposed plaintiff's application.

The Township zoning board denied plaintiff's requested relief. It concluded plaintiff's proposed medical cannabis cultivation facility was industrial rather than agricultural. It further found significant changes and upgrades to the building and Property were required to accommodate plaintiff's cannabis cultivation facility.

In September 2023, plaintiff filed a separate complaint under Docket No. L-343-23 against defendants and Bohn, asserting a claim for unlawful interference with prospective economic advantage (Second lawsuit).[2] The sole count in the Second lawsuit alleged:

> . . . Bohn . . . sought to become a "fly in the ointment" so to speak, in [p]laintiff's land-use application process to thwart [p]laintiff's attempt to finalize plans for cannabis cultivation at the Property.

---

[2] The Second lawsuit is the subject of this appeal.

6

. . . .

> . . . SLTC ha[d] no other purpose than to try to defeat [p]laintiff['s] . . . land[-]use applications to [the] Township, and ha[d] absolutely no legitimate reasons as to why [p]laintiff[']s applications should be defeated, save the obvious ulterior motive of . . . Bohn's intentions to ensure he does not have any competition when he attempts to start his own cannabis cultivation operation at the Bohn [p]roperties.

> . . . SLTC further oppose[d] [p]laintiff['s] . . . current hemp crop farming and cultivation, but likewise put[] forth absolutely no legitimate reasons why [p]laintiff's "right to farm" the same is attempting to be infringed upon.

> . . . the money that . . . SLTC has solicited in donations is merely being funneled for legal fees so that the group can continue to spin spurious pleadings in opposition to [p]laintiff['s] . . . plans.

Additionally, the Second lawsuit asserted defendants and Bohn "knew that they would attempt to delay and try to defeat [p]laintiff['s] efforts to secure land[-]use approvals for cannabis and hemp cultivation at the Property while . . . Bohn sought his own cannabis cultivation business in [the] Township." Plaintiff also claimed SLTC's formation "for the express purpose of opposing plaintiff['s] land[-]use applications for development of the Property for cannabis and/or hemp cultivation" constituted "a wrongful act that interfered with [p]laintiff's ability to sell medicinal cannabis, and/or hemp" which plaintiff

7

planned to "sell . . . to licensed [s]tate dispensaries for millions [of dollars] per month."

In October 2023, defendants filed a Rule 4:6-2(e) motion to dismiss the Second lawsuit.[3]  In December 2023, the judge handling the Second lawsuit heard argument on the motion.[4]  Defendants argued "plaintiff's suit [was] . . . trying to discourage . . . [defendants] from participating in the public life of their community."  They further asserted there is a strong public policy precluding attempts to infringe upon citizens' rights to object to development applications. Further, defendants claimed "[e]verything . . . described in the complaint is perfectly permissible and not tort[i]ous."  Defendants contended the Second lawsuit presented "a classic case" for application of the Noerr-Pennington[5] doctrine, which protects citizens' rights to participate and seek redress from the government.

---

[3]  At the time defendants moved to dismiss, Bohn had not been served with the Second lawsuit.

[4]  Different judges were assigned to handle the First and Second lawsuits.

[5]  The doctrine derives its name from Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657 (1965).

In opposition to the dismissal motion, plaintiff argued defendants provided no competing certifications responding to the allegations in the Second lawsuit. Accordingly, it claimed the judge was required to accept the allegations in the Second lawsuit as true. Plaintiff also urged the judge to deny the dismissal motion because defendants had not filed an answer in the Second lawsuit.

The judge issued a December 1, 2023 order granting defendants' motion to dismiss the Second lawsuit with prejudice and attached a twenty-one-page written statement of reasons. The judge wrote:

> Defendants seek to prevent [p]laintiff from obtaining land[-]use approval to cultivate . . . cannabis and hemp. Plaintiff is correct that the elements of an [u]nlawful [i]nterference with [p]rospective [e]conomic [a]dvantage claim are, when taking the allegations set forth in the [Second lawsuit] as true . . . . However, that is irrelevant here. As [d]efendants correctly point out, the determination made by the planning board and the success of [d]efendant[s] in the . . . underlying matter indicate that the objections are in fact reasonable. "Litigation can only be a sham (thereby subject to a damage action) if it is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. . . . Participation in municipal planning board hearings is deserving of the same protection." Vill. Supermarket, Inc. v. Mayfair Supermarkets, Inc., 269 N.J. Super. 224 ([Law Div.] 1993). Therefore, the actions by [d]efendants are entitled to the protections of the Noerr-Pennington [d]octrine, and as such, the [Second lawsuit] must be dismissed.

9

Two months after the judge dismissed the Second lawsuit with prejudice, plaintiff served Bohn with that complaint. Bohn then moved to dismiss the Second lawsuit for failure to state a claim under Rule 4:6-2(e), raising the same arguments as defendants in their motion to dismiss.

Rather than oppose Bohn's dismissal motion, or otherwise respond to the merits of the motion, plaintiff filed a May 14, 2024 amended complaint without seeking Bohn's consent or filing a motion requesting leave to file an amended pleading under Rule 4:9-1. Plaintiff's amended complaint included claims against defendants notwithstanding the with prejudice dismissal of the Second lawsuit against defendants six months earlier. The amended complaint alleged defendants and Bohn unlawfully interfered with plaintiff's prospective economic advantage and sought a declaratory judgment determining the Property constituted a commercial farm under the Right to Farm Act, N.J.S.A. 4:1C-1 to -10.

In its amended complaint, plaintiff asserted SLTC filed an appeal with the Township to disapprove plaintiff's building permit application and "[d]efendants undertook the [a]ppeal maliciously with the sole purpose to hurt [p]laintiff . . . and its economic rights." Plaintiff's amended complaint stated:

> [SLTC's] [a]ppeal [was] objectively baseless, and [was] not supported by facts, law or even a good faith

extension of law. It [was] merely the venom of a lawyer's hope to use litigation and public participation immunity as a sword, hoping that it will excuse not merely public participation, but [d]efendants' vengeful and objectively baseless abuse of process, including the [a]ppeal.

In his dismissal motion, Bohn contended the Noerr-Pennington doctrine protected his right to object to plaintiff's application provided his objections were reasonable. Further, Bohn asserted he undertook the same activities as defendants, and their dismissal motion was granted because the judge found their concerns regarding plaintiff's proposed development objectively reasonable. Thus, Bohn argued the December 1, 2023 order dismissing the Second lawsuit validated his legal position.

Regarding plaintiff's filing of an amended complaint after Bohn filed his dismissal motion, Bohn asserted "courts in New Jersey . . . treat a motion to dismiss as a response requiring a motion to amend the complaint." Bohn also argued the amended complaint was futile. Additionally, Bohn claimed plaintiff had no damages because its cannabis application remained pending.

Regarding plaintiff's request for declaratory relief under the Right to Farm Act, Bohn argued the agricultural board had primary jurisdiction to decide whether the Property qualified as a farm. Bohn asserted the agricultural board determined the Property lacked the requirements to be deemed a farm. Further,

11

Bohn contended plaintiff's claims under the Right to Farm Act were "better brought in the pending [First lawsuit]."

In opposition, plaintiff cited Bank Leumi USA v. Kloss, 243 N.J. 218 (2020). Relying on Bank Leumi, plaintiff argued Rule 4:9-1 did not preclude it from amending the complaint because a motion to dismiss did not constitute a responsive pleading. Notwithstanding plaintiff's failure to file a motion or cross-motion seeking leave to file an amended complaint, plaintiff asserted the amended complaint was timely and appropriate. Thus, plaintiff contends the judge was required to consider the allegations in the amended complaint in deciding Bohn's dismissal motion.

After hearing argument, the judge granted Bohn's dismissal motion and declined to consider plaintiff's amended complaint. In a twenty-two-page written statement of reasons accompanying a June 20, 2024 order, the judge found the allegations in plaintiff's complaint were "bare."

Additionally, the judge rejected plaintiff's reliance on Bank Leumi. The judge reasoned "[t]he Bank Leumi Court distinguished between the motion to dismiss and the answer for purposes of claim preclusion and entire controversy doctrine," explaining the distinction was "to preserve the ability [of the party

obtaining dismissal] to bring cross[-] claims where [the] initial complaint [was] deficient."

The judge expressly found "[p]laintiff use[d] a pending motion to dismiss as a foundation to tailor a new amended complaint . . . to sidestep all existing arguments therein." Because plaintiff filed the amended complaint without consent or a motion for leave to file an amended pleading, the judge held Bohn's "motion to dismiss for failure to state a claim serve[d] as a de facto responsive pleading." As the judge explained, plaintiff "chose not to oppose the motion in substance, but rather rel[ied] exclusively on its new amended complaint as a mechanism to render [Bohn's] motion moot." Thus, the judge deemed the amended complaint improper and untimely and declined to consider that pleading in deciding Bohn's dismissal motion.

Further, the judge found plaintiff's allegations against Bohn in the complaint, "when accepted as true for purposes of th[e] motion, [met] the elements of a claim for [u]nlawful interference with [p]rospective [e]conomic [a]dvantage, especially when coupled with the allegation that [Bohn] was motivated by anti-competitive purposes, i.e. a desire to have his own hemp farm." However, the judge held "[b]ecause of Noerr-Pennington, the motives and intent of [Bohn we]re entirely irrelevant. The only requirement under the

doctrine is the objective reasonableness of the objections made by [Bohn]." The judge relied on our decision in Fraser v. Bovino, 317 N.J. Super. 23 (App. Div. 1998), stating that "[w]hile the underlying motives of the objections are irrelevant, the objection itself must be legitimately reasonable to be afforded the Noerr-Pennington [d]octrine protections."

The judge concluded Bohn's objections to plaintiff's proposed development of the Property were legitimately reasonable because he and defendants were "at least partially vindicated in their actions thus far." Further, the judge determined plaintiff failed to present any "arguments offering support for the proposition that [Bohn]'s objections [we]re patently unreasonable." The judge concluded Noerr-Pennington doctrine shielded Bohn from liability and dismissed plaintiff's Second lawsuit with prejudice.

On appeal, plaintiff contends the judge erred in dismissing its complaint against defendants and Bohn. Specifically, plaintiff argues the dismissals should be reversed because: 1) the judge was required under Rule 4:9-1 to accept and consider its amended complaint; 2) the Noerr-Pennington doctrine does not immunize the actions of defendants and Bohn in opposing plaintiff's application before the Township zoning board; 3) the judge failed to draw all

14

factual inferences in its favor in deciding the motions to dismiss; and 4) the judge improperly dismissed the complaint with prejudice.

We first address plaintiff's argument the judge erred in striking its amended complaint as improper and untimely and declining to consider the allegations in that pleading in deciding Bohn's dismissal motion.[6] We disagree.

Rule 4:9-1 states:

> A party may amend any pleading as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is to be served, and the action has not been placed upon the trial calendar, at any time within [ninety] days after it is served. Thereafter a party may amend a pleading only by written consent of the adverse party or by leave of court which shall be freely given in the interest of justice.

Because defendants and Bohn had not filed answers, plaintiff argues its amended complaint was proper and timely under Rule 4:9-1. Plaintiff further

---

[6]  We note plaintiff's Second lawsuit was dismissed with prejudice as to defendants in the December 1, 2023 order. Therefore, plaintiff's May 14, 2024 amended complaint could not resurrect claims against defendants. "A judgment of involuntary dismissal or a dismissal with prejudice constitutes an adjudication on the merits 'as fully and completely as if the order had been entered after trial.'" Velasquez v. Franz, 123 N.J. 498, 507 (1991) (quoting Gambocz v. Yelencsics, 468 F.2d 837, 840 (3d Cir. 1972) (internal citations omitted)). "Such a dismissal 'concludes the rights of the parties as if the suit had been prosecuted to final adjudication adverse to the plaintiff.'" Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 243 (1998) (quoting Mayflower Indus. v. Thor Corp., 17 N.J. Super. 505, 509 (Ch. Div. 1952)).

contends that motions to dismiss are not responsive pleadings within the meaning of the Rule.

However, the 2025 comments to the Rule do not support plaintiff's argument.  See Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:9-1 (2025) ("The rule is clear that amendments to claims or counterclaims may be filed as of right any time before the filing of a responsive pleading, including a motion to dismiss." (emphasis added) (citing Paternoster v. Shuster, 296 N.J. Super. 544, 562 (App. Div. 1997))).

Plaintiff cites Rule 4:6-1(b) as establishing a distinction between a motion to dismiss and a responsive pleading.  That Rule provides:

> Unless the court fixes a different time period, the time periods prescribed in paragraph (a) of this rule are altered by the filing and service of a motion [to dismiss] under R. 4:6 . . . as follows:  (1) if the motion is denied in whole or part or its disposition postponed until trial, the responsive pleading shall be served within [ten] days after notice of the court's action; (2) if a motion for a more definite statement is granted, the responsive pleadings shall be served within [ten] days after the service of such statement.

> [R. 4:6-1(b).]

Plaintiff argues Rule 4:6-1(b) contemplates the filing of a "responsive pleading" if a motion to dismiss is denied, which necessarily means a responsive pleading and a motion to dismiss are distinct filings.  According to plaintiff,

Rule 4:6-1(b) would "lose[] all meaning if the motion to dismiss is the responsive pleading."

Plaintiff relies heavily on Bank Leumi, which it contends "stated conclusively that a motion to dismiss is not a responsive pleading." Plaintiff argues the judge, contrary to the holding in Bank Leumi, erroneously found the dismissal motions "serve[d] as . . . de facto responsive pleading[s]."

Bohn's dismissal motion was filed but not decided when plaintiff filed the May 14, 2024 amended complaint. As a result, Bohn argues plaintiff required "consent or leave of court before filing the [a]mended [c]omplaint." Further, Bohn asserts the Bank Leumi decision does not stand for the proposition argued by plaintiff. He contends there is no reason for a moving party to file an additional pleading until there is a judicial decision on a pending dismissal motion.

Plaintiff urges this court to apply the holding in Bank Leumi even though that case addressed a distinct issue on certification of a question of law from the United States Court of Appeals for the Third Circuit. The certified question asked the New Jersey Supreme Court to consider the following:

> When a party filed, in lieu of an answer, a motion to dismiss under [Rule] 4:6-2(e) for failure to state a claim, and the court dismissed with prejudice, is that party subject to claim preclusion when—in a later suit

17

that it files arising from the same transactional facts—
the defendant asserts the entire controversy doctrine as
an affirmative defense?

[Bank Leumi, 243 N.J. at 221.]

In Bank Leumi, the Court stated it was "consider[ing] the distinction" between a motion to dismiss and a responsive pleading "in th[e] context" of compulsory counterclaims. Id. at 229. The Court concluded "a party who files a successful motion to dismiss for failure to state a claim is not precluded by the entire controversy doctrine from asserting claims in a later suit that arise from the same transactional facts." Id. at 231-32.

The Bank Leumi Court focused on the preclusive effect under Rules 4:7-1 and 4:30A where the plaintiff was denied an opportunity to assert what would have constituted counterclaims had the plaintiff not been successful in its pre-answer motion to dismiss. See Id. at 224-25. The Court did not analyze, nor was it required to do so in responding to the Third Circuit's certified question, whether a plaintiff may file an amended pleading under Rule 4:9-1 as of right when a defendant filed a motion to dismiss the complaint and had not filed an answer.

We acknowledge the Bank Leumi case generally contains the language cited by plaintiff. However, the issue in this appeal is distinct from the issue

18

presented in <u>Bank Leumi</u>. In this case, the issue is not related to the assertion of claim preclusion or the entire controversy doctrine with respect to a future action. The issue here is whether a plaintiff may file an amended complaint under <u>Rule</u> 4:9-1, after a defendant filed a motion to dismiss under <u>Rule</u> 4:6-2(e), absent consent or a motion for leave to file an amended pleading.

We are satisfied plaintiff's reliance on <u>Bank Leumi</u> is taken out of context from the holding in that case. <u>See</u> <u>Hoelz v. Bowers</u>, 473 N.J. Super. 42, 61 (App. Div. 2022) (explaining the plaintiff ignored the context of the court's holding and disingenuously "cherry-pick[ed] dicta from some of [the holdings] to fashion an argument" supporting her claim); <u>In re Elec. for Atl. Cnty. Freeholder Dist. 3 2020 Gen. Elec.</u>, 468 N.J. Super. 341, 362 (App. Div. 2021) (stating the plaintiff "ha[d] taken [the court's] holding out of context" by isolating part of the court's reasoning and mistakenly asserting it applied broadly to the issue presented by her claims).

In <u>Paternoster</u>, we considered the propriety of the defendant's filing of an amended counterclaim prior to the plaintiff's filing of a motion to dismiss. Because the defendant's filing of an amended counterclaim preceded the plaintiff's dismissal motion, we held the amended counterclaim was "timely

filed." 296 N.J. Super. at 562. The facts in Paternoster permitting the filing of an amended pleading are distinguishable from the facts in this case.

If we were to accept plaintiff's argument, a party could move to amend a complaint or counterclaim to correct deficiencies in the pleading after the adverse party files a dismissal motion without any notice to the moving party. To permit such a litigation tactic would deprive the party seeking dismissal of a pleading the opportunity to articulate why leave to amend the pleading would be futile or other reasons requiring rejection of the proposed amended pleading. "[T]he minimum requirements of due process of law are notice and an opportunity to be heard. . . . The opportunity to be heard contemplated by the concept of due process means an opportunity to be heard at a meaningful time and in a meaningful manner." Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 84 (App. Div. 2001) (citations reformatted).

Here, Bohn and defendants were deprived of a meaningful opportunity to present arguments in opposition to plaintiff's proposed amended pleading. We are satisfied that a party seeking to amend a pleading after the filing of a motion to dismiss must obtain consent or file a cross-motion seeking leave to amend to give the opposing party notice and a meaningful opportunity to be heard. To the extent plaintiff believes the Rules of Court regarding the filing of an amended

20

complaint as of right under Rule 4:9-1 when there is a pending motion to dismiss under Rule 4:6-2(e) are unclear, plaintiff may submit a request for clarification to the Civil Practice Committee.[7]

We next address plaintiff's argument the judge erred in finding defendants and Bohn immune from the claims in the Second lawsuit under the Noerr-Pennington doctrine. We disagree.

The Noerr-Pennington doctrine recognizes the First Amendment right of citizens to petition their government and generally immunizes petitioning activities from civil liability. See Oasis Therapeutic Life Ctrs., Inc. v. Wade, 457 N.J. Super. 218, 232 (App. Div. 2018).

The doctrine has its roots in antitrust law and was named after two antitrust cases. See E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965). In those cases, the United States Supreme Court held the defendants were immune from antitrust liability for engaging in conduct, including litigation, aimed at influencing decision-making by the government. Pro. Real

---

[7] See First Resol. Inv. Corp. v. Seker, 171 N.J. 502, 517 (2002) (noting "[t]he Civil Practice Committee is the appropriate entity to evaluate" ambiguities within the Court Rules).

Est. Invs., Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 56 (1993) (summarizing the holding of Noerr and Pennington).

The protection under the Noerr-Pennington doctrine has expanded beyond antitrust cases to include protection against other types of claims, including tort claims for malicious prosecution and abuse of process. See Main St. at Woolwich, LLC v. Ammons Supermarket, Inc., 451 N.J. Super. 135, 144 (App. Div. 2017). "New Jersey courts have recognized the Noerr-Pennington doctrine and applied it to afford immunity to those who petition the government for redress." Ibid.; Structure Bldg. Corp. v. Abella, 377 N.J. Super. 467, 471 (App. Div. 2005) (explaining residents dissatisfied with a zoning board's actions have the absolute right under the doctrine to participate in hearings, oppose zoning applications affecting their property, and file an appeal to the courts).

There is a limitation on the application of the Noerr-Pennington doctrine. The doctrine does not apply if the conduct at issue is a "sham." See Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 556 (2014) (quoting Pro. Real Est. Invs., 508 U.S. at 51); see also Main St. at Woolwich, 451 N.J. Super. at 144. The question whether the conduct at issue constitutes "a mere sham," thus subjecting the actor to potential tort liability, is answered objectively, without consideration of the actor's underlying motivation, no

matter how improper or selfish the motives. Oasis Therapeutic Life Ctrs., 457 N.J. Super. at 232. "Only if challenged [litigation] is objectively meritless may a court examine the [litigant's] subjective motivation." Pro. Real Est. Invs., 508 U.S. at 50.

Additionally, petitioning activity is not protected when it is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Pro. Real Est. Invs., 508 U.S. at 50 (internal citation omitted). Accordingly, the doctrine does not protect actions that aim to further wrongful conduct through use of the governmental process as opposed to the outcome of that process. Ibid. "[P]rivate action that is not genuinely aimed at procuring favorable government action is a mere sham that cannot be deemed a valid effort to influence government action." Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 500 n.4 (1988).

While plaintiff asserts the opposition to its cannabis facility by defendants and Bohn was a sham, the record does not support its claim. In every litigation, "the essential facts supporting plaintiff's cause of action must be presented in order for the claim to survive; conclusory allegations are insufficient in that regard." Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012) (citing Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 798

(1989)).  Here, plaintiff's allegations against defendants and Bohn were unsupported, conclusory, and insufficient to survive a motion to dismiss.

In the complaint, plaintiff sets forth speculation and innuendo asserting the opposition to its cannabis project lodged by Bohn and defendants was a sham.  Even affording plaintiff all reasonable inferences, and assuming the motives of Bohn and defendants were anti-competitive as plaintiff asserts, their objections before the various municipal entities were not objectively meritless.  Indeed, both the Township planning board and zoning board rejected plaintiff's application.  Regardless of their motives, the opposition to plaintiff's application was subject to reasonable debate and a proper exercise of the constitutional right to petition the government, thus entitling Bohn and defendants to immunity under the Noerr-Pennington doctrine.

We also reject plaintiff's claim the judge failed to draw all inferences in its favor in deciding the motions to dismiss.  When considering a motion to dismiss for failure to state a claim, a judge must afford the pleader "'the most favorable inferences which may reasonably be drawn from' the pleading's allegations."  Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (quoting Rappaport v. Nichols, 31 N.J. 188, 193 (1959)).  For purposes of a motion to dismiss, the judge must "assume the truth of the allegations of the

24

complaint, giving plaintiff the benefit of all reasonable factual inferences that those allegations support." F.G. v. MacDonell, 150 N.J. 550, 556 (1997). At the early stages of a litigation, courts are "not concerned with the ability of the plaintiffs to prove the allegation[s] contained in the [c]omplaint." Printing Mart-Morristown, 116 N.J. at 746.

Contrary to plaintiff's argument, the judge drew all inferences in favor of plaintiff for purposes of deciding the motions to dismiss. In doing so, the judge agreed plaintiff met "the elements of a claim for [u]nlawful interference with [p]rospective [e]conomic [a]dvantage, especially when coupled with the allegation that [Bohn] was motivated by anti-competitive purposes, i.e. a desire to have his own hemp farm." Despite the fact the judge accepted plaintiff's version of facts alleged in the complaint, and agreed the allegations were sufficient to support its claim, he concluded the Noerr-Pennington doctrine applied, which rendered the motives and intent of defendants and Bohn irrelevant. Thus, even though the judge found plaintiff pleaded the required elements for unlawful interference with prospective economic advantage, the judge concluded defendants and Bohn had objectively reasonable bases to voice their opposition to plaintiff's development application and were immune under the Noerr-Pennington doctrine.

A-3773-23

We next consider plaintiff's argument the judge erred in dismissing the Second lawsuit with prejudice for failure to state a claim.

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C., 237 N.J. 91, 108 (2019)). "A complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if 'the factual allegations are palpably insufficient to support a claim upon which relief can be granted.'" Frederick, 416 N.J. Super. at 597 (quoting Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). In considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint.'" Baskin, 246 N.J. at 171 (quoting Dimitrakopoulos, 237 N.J. at 108). The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown, 116 N.J. at 746 (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).

"Dismissals under Rule 4:6-2(e) are ordinarily without prejudice." Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022). However, "a dismissal with prejudice

26

is 'mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted,' Rieder v. State [Dept. of Transp.], 221 N.J. Super. 547, 552 (App. Div. 1987), or if 'discovery will not give rise to such a claim,' Dimitrakopoulos, [237 N.J. at 107]." Mac Prop. Grp. LLC, 473 N.J. Super. at 17. Where a trial court is "convinced . . . discovery will not supply a claim . . . , the complaint should be dismissed with prejudice." Est. of Campbell through Campbell v. Woodcliff Health & Rehab. Ctr., 479 N.J. Super. 64, 89-90 (App. Div. 2024).

Here, the Second lawsuit "describe[d] conversations between [Bohn] and [p]laintiff's principal." However, those conversations failed to establish that defendant's and Bohn's opposition to plaintiff's development application was a sham precluding immunity under the Noerr-Pennington doctrine.

Allowing plaintiff to file an amended complaint would be futile, as the judge correctly concluded no additional discovery would overcome immunity under the Noerr-Pennington doctrine. Under these circumstances, the judge properly dismissed the Second lawsuit with prejudice.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-3773-23